had used from time to time as his wife's and for her benefit.

DRUMMOND, District Judge. The language of the law is, "or if he has concealed any part of his estate or effects, or any books or writings relating thereto." Does not that mean if there was the intention to cover up and conceal property, that the will must have taken part in the effort to conceal? Suppose this man fairly believed, in good faith, that he had not a good right to this property, but that the right was in his wife, whereas, in fact he had the title, what then?

It might well happen that a man would have title to property that he would know nothing about. I apprehend that if he did not schedule it, that would not prevent his discharge in bankruptcy. The assignee can claim the property. The facts as they appear in evidence are these: He was married in 1859. At the time of his marriage his wife had $1,500 in her own right. This came into his hands, subject to his control, in a year after the marriage, apparently before the act of 1861 (1 Gross' St. c. 69a) in relation to married women's property went into operation. He had used this money or property from time to time as his wife's,—that is, for her benefit. That he kept it thus, entirely distinct in all instances from his own property, is his own statement, corroborated, to some extent, by that of his wife; that when he has operated with it he has operated with it as her money; that he did not make any entries in relation to it,—which, by the way, I think he ought to have done,—but he always kept it distinct and separate; that he turned this property or money into assets of various kinds, as bonds or stocks, or anything of that sort, which was evidenced on paper of various kinds; that he turned them over to his wife as her property, and when he wanted to use them again, for the purpose of making some other transaction, he took them and used them in the same way he had previously used the money; that, operating in this way for a series of years, this fund had accumulated some few thousand dollars, and, after it had thus accumulated,—the intent and motive of both parties, as they say, being, to appropriate it to the purchase of a home for themselves,—they purchased property on Wabash avenue, for which they paid about $4,500 cash, the whole purchase price being $9,000.

There may be a very important question, and one, perhaps, not entirely free from difficulty, as to the interest of the bankrupt in that property. The ordinary rule undoubtedly is, or was before the act of 1861, in this state, that the marriage of a woman transferred by operation of law all her personal property to him. But, as I understand this law, in order to prevent the discharge in bankruptcy (because it will be recollected that we are not deciding whether any interest in this property belongs to the assignee or not, but whether the bankrupt has concealed this property) there must have been on his part a voluntary concealment of property; that is to say, he must have had the property, knowing that he had it, and he must have concealed it. The language of the law means to hide, to secrete. I apprehend that there can be no doubt that where a man owns property of which he has no knowledge, as often happens, that the fact that he did not put it in his schedule would not prevent his discharge. There being no other ground of opposition, the discharge will be issued.

Consult In re Shoemaker [Case No. 12,799], and notes to same.

---

## Case No. 10,721.

In re PARKER et al.

[See 11 Fed. 397.]

---

## Case No. 10,722.

In re PARKER et al.

[1 Pa. Law J. (1842) 370.]

District Court, E. D. Pennsylvania.

BANKRUPTCY— DEBTS OF FIDUCIARY CHARACTER— PRODUCTION OF BOOKS.

[In the case of a voluntary application by a debtor for the benefit of the act, the court, if desired by a creditor who asserts that the debt due to him has been created in a fiduciary capacity, will direct the debtor to produce, even before the time for a decree, all books and papers having relation to the debt returned.]

The applicants in this case returned, in the schedule of debts they owed, one to Von Werke, which they described as due "on notes and money left with us, till convenient, through the rates of exchange, to draw upon for sums or amounts to suit our mutual ability or convenience."

H. D. Gilpin stated to the court that, if the circumstances of this case could be developed, it would appear that the debt thus returned had been contracted by malversation in a fiduciary capacity,—a fact which, by the first section of the act, would deprive the applicants of a decree; and, in order that he might more easily show the origin of the debt, he would ask the court for an order on the petitioners to produce, before the commissioners, all books and papers in their possession, having relation to this debt.

The granting of the order asked for was opposed by Mr. McIlvaine, who contended that as the law (section 6) enacted that such bankrupt shall, &c., be subject to examination, the court would not order an examination before the applicant was a bankrupt, i. e. had been so decreed; that, if the objecting creditor alleged that this debt was a fiduciary debt, he was, himself, bound to show that it was so, and could not call upon the petitioner to prove the case for him. But Mr. Gilpin having shown, by numerous authorities, that the present application was according to